**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | | |
|---|---|---|
| SPRINT NEXTEL CORPORATION | ) | |
| a Kansas corporation | ) | |
| 6480 Sprint Parkway | ) | |
| Overland Park, Kansas 66211; and | ) | |
| | ) | |
| SPRINT COMMUNICATIONS | ) | |
| COMPANY, L.P. | ) | Civil Action No: _____ |
| a Delaware limited Partnership | ) | |
| 6480 Sprint Parkway | ) | |
| Overland Park, Kansas 66211, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SIMPLE CELL INC. | ) | |
| a Maryland corporation | ) | |
| 1393 Progress Way, Suite 911 | ) | |
| Sykesville, Maryland 21784 | ) | |
| Carroll County; | ) | |
| | ) | |
| WIRELESS BUYBACKS HOLDINGS, LLC, | ) | |
| a Maryland corporation | ) | |
| 2657 Rainy Spring Court | ) | |
| Odenton, Maryland 21113 | ) | |
| Anne Arundel County; | ) | |
| | ) | |
| WIRELESS BUYBACKS, LLC | ) | |
| a Delaware corporation | ) | |
| c/o Corporation Trust Center | ) | |
| 1209 Orange Street | ) | |
| Wilmington, Delaware 19801 | ) | |
| | ) | |
| VAUGHN SOLUTIONS, LLC | ) | |
| a Kansas corporation | ) | |
| 16282 South Bradley Drive | ) | |
| Olathe, Kansas 66062; | ) | |
| | ) | |
| HALO BRANDED SOLUTIONS, INC. | ) | |
| a Delaware corporation | ) | |
| c/o Corporation Trust Center | ) | |
| 1209 Orange Street | ) | |

Wilmington, Delaware 19801          )
          )
MARSHA LAVIAGE d/b/a APPCOM      )
1911 NE 8th Court, Apt. #130        )
Fort Lauderdale, Florida 33304;      )
          )
MELISSA LAVIAGE          )
2500 Woodland Park Drive, Apt M310   )
Houston, Texas 77077-3263;        )
          )
KEVIN A. LOWE          )
10037 Davis Avenue         )
Woodstock, Maryland 21163       )
Baltimore County;          )
          )
CHRISTOPHER E. METZGER       )
183 Ellen Avenue          )
Severn, Maryland 21144        )
Anne Arundel County;        )
          )
KEVIN EDWARD SALKELD       )
15224 Donna Drive         )
Silver Spring, Maryland 20905      )
Montgomery County;        )
          )
BRENDAN T. SKELLY        )
4263 Samhill Court         )
Mount Airy, Maryland 21771       )
Frederick County;          )
          )
SHANNON A. SKELLY        )
a/k/a SHANNON A. BARRY       )
3421 Tuckaway Drive        )
Mount Airy, Maryland 21771-8068    )
Carroll County;          )
          )
NICHOLAS F. SKELLY        )
3421 Tuckaway Drive        )
Mount Airy,  Maryland 21771-8068   )
Carroll County; and         )
          )
BRETT VAUGHN          )
16282 S. Bradley Drive        )
Olathe, Kansas 66062,        )
          )
     Defendants.        )

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Sprint Nextel Corporation and Sprint Communications Company, L.P. (collectively "Sprint" or "Plaintiffs"), hereby file this Complaint for Damages and Injunctive Relief against Defendants Simple Cell Inc., Wireless Buybacks Holdings, LLC, Wireless Buybacks, LLC, Vaughn Solutions, LLC, HALO Branded Solutions, Inc., Marsha Laviage d/b/a APPCOM, Kevin A. Lowe, Christopher E. Metzger, Kevin Edward Salkeld, Brendan T. Skelly, Nicholas F. Skelly, Shannon Skelly, and Brett Vaughn (collectively "Defendants") and state:

## INTRODUCTION AND BACKGROUND

1.      This is an action for damages and injunctive relief arising out of Defendants' participation in a conspiracy to willfully infringe Sprint's rights related to its specially-manufactured wireless telephones designed for use on Sprint's wireless service, including specifically, but not limited to Sprint iPhones (collectively, "Sprint Phones" or "Phones").

2.      As set forth in greater detail below, Defendants are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and deceptive bulk purchase and resale, both domestically and overseas, of Sprint Phones, theft of Sprint's subsidy investment in the Phones, unlawful access of Sprint's protected computer systems and wireless network, trafficking of Sprint's protected and confidential computer passwords, and willful infringement of Sprint's trademarks (collectively, the "Bulk Handset Trafficking Scheme" or the "Scheme").

3.      Defendants perpetrate their Bulk Handset Trafficking Scheme by acquiring large quantities of Sprint Phones from Sprint and/or Sprint authorized dealers and retailers, and by soliciting others to purchase Sprint Phones in large quantities for the benefit of Defendants. Defendants acquire the Sprint Phones with the knowledge and intent that the Phones will not be

used on the Sprint wireless network (as required by the Sprint contracts).  Instead, the Phones are trafficked and the vast majority are ultimately resold as new overseas where the Phones are not subsidized by wireless carriers (as they are in the United States) and where the Phones are not as readily available.  Thus, Defendants' Scheme effectively steals Sprint's subsidy investment in the Phones and converts the subsidy into Defendant's profits.

4.     Defendants also acquire Sprint Phones by stealing them in the more traditional sense.  Many of the Phones sold by Defendants were obtained through burglaries or armed robberies of Sprint retail stores and Sprint authorized dealer locations.

5.     Defendants acquire the Sprint Phones with the knowledge and intent that the Phones will be computer-hacked by Defendants or their co-conspirators.  The purpose of this hacking, known as "unlocking," is to disable software installed in the Phones by the manufacturers at the request and expense of Sprint, which enables the activation of the Sprint Phones exclusively on Sprint's wireless network.  The purpose of the software is to allow Sprint to offer the Phones at a discount to the consumer while protecting Sprint's subsidy investment in the Phones.  The illegally unlocked Phones are trafficked and resold as new by Defendants or their co-conspirators, at a premium, under the Sprint trademarks – in violation of federal trademark laws under 15 U.S.C. § 1125.

6.     In addition to violating the terms of Sprint's contracts and constituting various torts, Defendants' Bulk Handset Trafficking Scheme constitutes unfair competition and consumer fraud under the common law of the State of Maryland because the Scheme is predicated on the unauthorized exploitation of Sprint's subsidy investment in its Phones and the Sprint trademark and goodwill.  By reselling the Phones in foreign countries where wireless providers do not subsidize mobile phones, Defendants or their co-conspirators are able to sell the

Phones at below-market prices (which are substantially higher than in the United States) and keep the Sprint subsidy for themselves. Defendants exploit Sprint's subsidy investment in the Phones without incurring any of the costs themselves, thereby unjustly enriching themselves at Sprint's expense.

7.     The Bulk Handset Trafficking Scheme also violates several provisions of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* Defendants and/or their co-conspirators make misrepresentations in order to induce Sprint to activate Phones purchased by the Defendants and/or their co-conspirators on Sprint's wireless telecommunications network, thereby providing Defendants and/or their co-conspirators unauthorized access to Sprint's protected computer networks and inducing Sprint to sell Phones at subsidized prices. By bulk purchasing and selling Sprint Phones, Defendants and/or their co-conspirators are also illegally: (a) trafficking in the confidential codes contained in the Phones that allow access to Sprint's protected computer networks, and (b) facilitating the improper access of Sprint's telecommunications network.

8.     In an effort to prevent the Bulk Handset Trafficking Scheme, among other things, Sprint and its authorized dealers and retailers have implemented policies limiting the number of Sprint Phones an individual may purchase on a daily basis. Defendants and their co-conspirators, through their Bulk Handset Trafficking Scheme, have taken steps to circumvent these policies by, among other things, employing large numbers of "Runners" to make multiple purchases of Sprint Phones on behalf of Defendants and/or their co-conspirators.

9.     Defendants' conduct, together with that of currently unknown civil and criminal co-conspirators, is causing Sprint to suffer millions of dollars in losses and is causing immediate and irreparable injury to Sprint.

10.     All conditions precedent to filing this action have been performed, waived or excused.

11.     Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

12.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

13.     Sprint Nextel Corporation is a Kansas corporation, with its principal place of business in Overland Park, Kansas.

14.     Sprint Communications Company, L.P. is a Delaware limited partnership, with its principal place of business in Overland Park, Kansas.

15.     Defendant, Simple Cell Inc. ("Simple Cell") is a Maryland corporation with its principal place of business in Sykesville, Maryland.

16.     Upon information and belief, Defendant, Wireless Buybacks Holdings, LLC is a Maryland limited liability company with its principal place of business in Odenton, Maryland.

17.     Upon information and belief, Defendant, Wireless Buybacks, LLC is a Delaware limited liability company with its principal place of business in Odenton, Maryland. (Wireless Buyback Holdings, LLC and Wireless Buybacks, LLC will collectively be referred to as "Wireless Buybacks").

18.     Defendant, Brendan T. Skelly ("Brendan Skelly") is an individual and a resident of Mount Airy, Maryland and upon information and belief is an owner and agent of Wireless Buybacks and personally engaged in, and helped facilitate and further, the improper conduct described herein.

19.     Defendant, Kevin A. Lowe a/k/a Kevin Lowe ("Lowe") is an individual and a resident of Woodstock, Maryland, and upon information and belief is an agent and chief operating officer of Wireless Buybacks and personally engaged in, and helped facilitate and further, the improper conduct described herein.

20.     Defendant, Christopher Metzger ("Metzger") is an individual and a resident of Severn, Maryland, and upon information and belief is the chief operating officer of Simple Cell, and personally engaged in, and helped facilitate and further, the improper conduct described herein.

21.     Defendant, Kevin Edward Salkeld ("Kevin Salkeld") is an individual and a resident of Silver Spring, Maryland and upon information and belief is head of purchasing at Wireless Buyback, LLC, and personally engaged in, and helped facilitate and further, the improper conduct described herein.

22.     Defendant, Nicholas F. Skelly ("Nicholas Skelly") is an individual and a resident of Mount Airy, Maryland and, upon information and belief is an agent and president of Simple Cell, and personally engaged in, and helped facilitate and further, the improper conduct described herein.

23.     Defendant, Shannon A. Skelly a/k/a/ Shannon A. Barry ("Shannon Skelly") is an individual and a resident of Mount Airy, Maryland and upon information and belief is the vice-president of merchandise for Simple Cell, and personally engaged in, and helped facilitate and further, the improper conduct described herein.

24.     Defendant, Vaughn Solutions, LLC ("Vaughn Solutions") is a Kansas corporation with its principal place of business in Olathe, Kansas.

25.     Defendant, Brett Vaughn ("Vaughn") is an individual and a resident of Olathe, Kansas and upon information and belief is an owner of Vaughn Solutions, and personally engaged in, and helped facilitate and further, the improper conduct described herein.

26.     Defendant, Marsha Laviage d/b/a APPCOM ("Marsha Laviage") is an individual and a resident of Fort Lauderdale, Florida, and personally engaged in, and helped facilitate and further, the improper conduct described herein.

27.     Defendant, HALO Branded Solutions, Inc. ("HALO") is a Delaware corporation with its principal place of business in Illinois.  Upon information and belief, HALO has several offices and regularly conducts business in Maryland and this District.

28.     Defendant, Melissa Laviage ("Melissa Laviage") is, upon information and belief, an individual and a resident of Houston, Texas, and personally engaged in, and helped facilitate and further, the improper conduct described herein.  Melissa Laviage is a Sales Assistant for HALO.   (Melissa Laviage and HALO will collectively be referred to as the "HALO Defendants").

29.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* arise under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

30.     Defendants Christopher Metzger, Brendan Skelly, Nicholas Skelly, Shannon Skelly, Kevin Lowe, and Kevin Salkeld are subject to the personal jurisdiction of this Court because they reside in Maryland.  Defendants Wireless Buybacks Holdings, Wireless Buybacks,

and Simple Cell are subject to the personal jurisdiction of this Court because they are Maryland corporations and/or maintain their principal places of business in Maryland. Defendants Christopher Metzger, Brendan Skelly, Nicholas Skelly, Shannon Skelly, Kevin Lowe, Kevin Salkeld, Wireless Buybacks Holdings, Wireless Buybacks, and Simple Cell are further subject to the personal jurisdiction of this Court because they have conducted, engaged in and carried out business ventures within the State of Maryland; they have committed tortious acts within the State of Maryland; and they have engaged in substantial and not isolated activity within the State of Maryland.

31.     Defendants Vaughn Solutions, HALO, Marsha Laviage and Melissa Laviage are subject to the personal jurisdiction of this Court because they have conducted, engaged in and carried out business ventures within the State of Maryland; they have committed tortious acts within the State of Maryland; and they have engaged in substantial and not isolated activity within the State of Maryland.

32.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants either reside in this district or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**SPRINT'S BUSINESS MODEL**

33.     Sprint Nextel Corporation and its affiliates offer a comprehensive range of wireless and wireline communications services, bringing the freedom of mobility to consumers, businesses and government users. Sprint currently serves more than 56 million customers, and is widely recognized for developing, engineering and deploying innovative technologies. The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

34.     Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network.  In addition to being available through Sprint online and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers and retailers around the country.

35.     Sprint's business model is based upon Sprint's ability to deliver an affordable and up to date product to its consumers.  Therefore, Sprint subsidizes its customers' acquisition of the Sprint Phones by selling its Phones for substantially less than the Phones cost Sprint.  Sprint recoups this subsidy through profits earned on the sale of Sprint service, which is required to make and receive calls and text messages on, and transmit data through, the Sprint Phones. Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network.

36.     An important aspect of Sprint's Phone subsidy program is ensuring that Sprint's customers have access to the newest state-of-the-art equipment in order to provide customers with the best possible wireless service experience.  Providing customers with the latest equipment also helps Sprint maintain the efficiency of its wireless network, and facilitates migration of customers from older technologies to newer protocols, such as 4G LTE.  As a result, Sprint provides subsidized new Phones to its customers at the inception of a new customer account and at various intervals during the customer's tenure for upgrading to the latest technology.

37.     Sprint has made a particularly significant investment for its customers in the smartphone market.  The Wall Street Journal reported in early November 2011 that Sprint agreed to buy 30.5 million iPhones from Apple over the next four years, at a cost of approximately $20 billion.

38.     Manufacturers that produce wireless phones for Sprint install proprietary locking software, requested and paid for by Sprint, into the Sprint Phones.   Among other things, this locking software prevents the Phones from being used outside the Sprint network.   Federal regulators recently revoked an exemption to the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et. seq.*, ("DMCA") for wireless phone unlocking, paving the way for unlockers to be criminally prosecuted under the DMCA, based upon the explanation that:

> the practice of locking cell phones is an essential part of the wireless industry's predominant business model, which involves subsidizing the cost of wireless handsets in exchange for a commitment from the customer that the phone will be used on that carrier's service so that the subsidy can eventually be recouped by the carrier. CTIA alleged that the industry has been plagued by ''large scale phone trafficking operations'' that buy large quantities of pre-paid phones, unlock them, and resell them in foreign markets where carriers do not subsidize handsets.

*Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies*, 77 Fed. Reg. 65260, 65265 (Oct. 26, 2012) (amending 37 C.F.R. § 201.40).   Like all wireless carriers in the United States, Sprint has policies in place to unlock Phones for legitimate customers in certain circumstances, in order to allow the customers to continue to use their Sprint Phone for international travel or if they port their service to another carrier with compatible technology.  *See* 47 U.S.C. § 251(b)(2).

39.     There are two main competing wireless network technologies worldwide: Global System for Mobile Communications ("GSM") and Code Division Multiple Access ("CDMA"). CDMA and GSM technologies are not interoperable, meaning phones with CDMA technology will not operate on GSM networks and vice-versa.   The Sprint wireless network is based on the CDMA platform, which is also used by other wireless providers throughout the world.

40.     The Apple iPhone sold by Sprint is a "world phone," meaning that it supports both CDMA and GSM technologies.  Prior to November 11, 2011, the Sprint iPhones that were

specifically manufactured for Sprint were locked to the CDMA Sprint wireless network but the GSM connection was not locked to a particular platform.  Sprint customers could purchase SIM cards when traveling internationally to enable their iPhone handsets to operate on GSM networks in foreign countries.  Defendants' Bulk Handset Trafficking Scheme exploits this feature and profits by reselling Sprint iPhones and other Sprint world phones for use on GSM networks in foreign countries.  On November 11, 2011, Sprint began locking the iPhone SIM to Sprint's network, but Defendants' trafficking has continued unabated.

**SPRINT'S TRADEMARK RIGHTS**

41.     Sprint Communications Company L.P. owns federal trademark registrations for the standard character and stylized Sprint® marks and licenses the right to use said marks to Sprint Nextel Corporation (collectively, the "Sprint Marks").[1]   The stylized Sprint mark is depicted below:



42.     Sprint uses the Sprint Marks on and in connection with its telecommunications products and services.

43.     As a result of the high quality of Sprint's products, services, sales, promotion and advertising thereof, the Sprint Marks have become an intrinsic and essential part of the valuable goodwill and property of Sprint.  The Sprint Marks are well known and established to customers and the trade as symbols identifying and distinguishing Sprint's products and services, signifying distinctive products and services of high quality, and providing actual notice that the Phones are

---

[1] True and correct copies of the certificates of registration issued by the United States Patent and Trademark Office are attached hereto as **Composite Exhibit A**.

intended for use solely within Sprint's wireless system.  Only Sprint and its authorized, affiliated

agents are permitted to use the Sprint Marks.  The Sprint Marks are valid, distinctive,

protectable, famous, have acquired secondary meaning, and are associated exclusively with

Sprint Communications and its licensee Sprint Nextel.

## TERMS AND CONDITIONS REGARDING
## THE USE OF SPRINT PHONES

44.     Sprint Phones are sold subject to terms and conditions ("Terms and Conditions")

which conspicuously restrict and limit the sale and use of the Phones.  A copy of the Terms and

Conditions is attached hereto as **Exhibit B**.  These Terms and Conditions are set forth in printed

inserts that are included with the purchase of every Sprint Phone.  The Terms and Conditions

constitute a valid and binding contract.

45.     Limitations set out in the Terms and Conditions are intended to restrict the use of

Sprint Phones to Sprint's wireless network.  Among other things, the Terms and Conditions: (a)

require that the customer pay his/her monthly service charges and other related fees; (b) require the

customer to pay an Early Termination Fee ("ETF") for each line of service that is terminated

before the contract term is concluded; (c) indicate that the Phone is designed to be activated on the

Sprint CDMA network; (d) prohibit resale of Sprint Phones and related products and services; and

(e) prohibit using the Phones for a purpose that could damage or adversely affect Sprint.

46.     One purpose of the restrictions in the Terms and Conditions is to protect Sprint's

ability to provide consumers with affordable access to the latest Phones, and to inhibit the ability of

traffickers such as Defendants to steal the subsidies that Sprint intends to benefit consumers.

## DEFENDANTS' MISCONDUCT

47.     Sprint has discovered that, although large quantities of its Phones are being

purchased throughout the United States, a significant number of these Phones are not being

activated for use on the Sprint network.

48.     Instead, entities and individuals such as Defendants and their co-conspirators are purchasing and fraudulently reselling Sprint Phones in bulk quantities.  The Phones are purchased, either directly by Defendants or through their co-conspirators, and are sold for substantial profits, to be used on other wireless carriers' networks, often overseas.  Other times, the Phones are taken out of their original packaging, all accessories, warranties, and manuals are removed, and the Phones are shipped overseas and sold.  Defendants and their co-conspirators undertake these actions for profit, not for the sole purpose of lawfully connecting to the Sprint wireless network.

49.     Many of the Sprint Phones trafficked by Defendants were stolen by Defendants or their co-conspirators in burglaries or armed robberies of Sprint retail stores or Sprint authorized dealers.

50.     Once a Sprint Phone is shipped overseas and becomes operable on other wireless networks, Sprint no longer has a revenue source to recoup the invested subsidy on that Phone.

51.     Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells Sprint Phones.  Defendants have purchased and sold large quantities of Sprint Phones through various co-conspirators.  While the complete extent of Defendants' activities in the Bulk Handset Trafficking Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.

52.     Defendants regularly advertise their infringing and stolen Sprint Phones on internet sites such as   www.simplecellinc.com,   www.wassociation.com,   www.ebay.com, www.wirelessindustry.com and www.thewirelessbuzz.com.   Print-outs evidencing Defendants' advertisements are attached hereto as **Composite Exhibit C**.

53.     From August through November 2012, an investigator for Sprint exchanged several emails with Defendants Metzger and Nicholas Skelly regarding their and Simple Cell's ability to buy and sell large quantities of brand new Sprint Phones.   Specifically, Defendant Metzger indicated that he obtains at least 100 Sprint Phones per week that he resells and that the Sprint Phones that he buys "need to be brand new".   A copy of these email communications is attached hereto as **Exhibit D**.

54.     On August 24, 2012, an investigator for Sprint purchased a brand new HTC EVO Shift for $289.99 from Simple Cell through its website located at www.simplecellinc.com.   A copy of the invoice issued by Defendants reflecting that transaction is attached hereto as **Exhibit E**.

55.     On October 3, 2012, an investigator for Sprint purchased a brand new Sprint Samsung Galaxy 3 from Simple Cell for $538.73 via certified bank check.   A true and correct copy of the invoice is attached hereto as **Exhibit F**.   Upon further investigation, it was determined that this phone was likely stolen from an authorized Sprint dealer.

56.     On October 2-3, 2012, Defendant Metzger indicated in writing that he could sell Sprint's undercover investigator 150 brand new, in their original boxes, Samsung Galaxy S3 Sprint Phones for $530.00 each.   *See* **Exhibit D**.

57.     On October 30, 2012, a Sprint investigator purchased another Sprint Samsung Galaxy 3 from Simple Cell via PayPal for $530.00.   A true and correct copy of the invoice is attached hereto as **Exhibit G**.   It was later determined that this Phone was fraudulently obtained through a legitimate Sprint account.

58.     In January 2013, Sprint learned that the HALO Defendants were advertising to sell 680 Sprint 16 GB iPhone 5s, new and sealed in their original packaging, for $585.00 each.

A copy of these email communications is attached hereto as **Exhibit H**.  The HALO Defendants identified their supplier as Defendant Brett Vaughn of Vaughn Solutions.  *Id.*  Further email correspondence indicated that Defendants Brett Vaughn and Vaughn Solutions were selling 800 brand new in their original box Sprint iPhone 5's with good ESNs.  *Id* [2]  The HALO Defendants provided a representative sample of ESNs for the 800 Sprint Phones.  When the ESNs from the representative sample were analyzed, it was determined that the vast majority of the Phones were stolen and/or obtained through improper means.

59.     In February 2013, Sprint's investigator corresponded by email with Defendants Brett Vaughn and Martha Laviage regarding the sale of large quantities of brand new Sprint iPhone 5s to a buyer located outside the United States.  A copy of these email communications is attached hereto as **Composite Exhibit I**.  On February 14, 2013, Vaughn Solutions agreed to sell Sprint's investigator 700 brand new in their original box 16 GB Sprint iPhone 5s at a unit price of $610.00, totaling $427,000.00.   A copy of the invoice is attached hereto as **Exhibit J**.  Defendant Vaughn identified his supplier for these Sprint Phones as Wireless Buybacks.  *See* **Exhibit I**.

60.     Defendants acknowledged by email that they understood the Sprint Phones they were selling to Sprint's investigator would be shipped overseas, and Defendants Vaughn even provided the international "SWIFT" code for his bank account on the invoice for the Sprint iPhone 5 handsets he planned to sell to the investigator, so the $427,000 payment for the first set of 700 Sprint iPhones could be wired directly into Vaughn's account by the overseas buyer.  *See* **Exhibits I and J**.

---

[2] Sprint has learned that in the language used by traffickers, a phone that has a "good" or "clean" electronic serial number ("ESN") means that the phone can be activated on a wireless network. A bad ESN, on the other hand, is not eligible to be activated on a wireless network because it was most likely obtained through theft.

61.     In addition, in February 2013, Sprint's investigator communicated with Defendant Marsha Laviage via email where she stated that she regularly obtains large quantities of 100 or more iPhone 5s, which she can sell to the investigator for $610.00 per Phone.  Copies of these emails are attached hereto as **Exhibit K**.

62.     Upon information and belief, on or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided Wireless Buybacks' warehouse in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen Sprint Phones.  Upon information and belief, the Sprint Phones that Defendants were trying to sell Sprint's investigators were included among the stolen Phones that were seized from Wireless Buybacks' warehouse.

63.     Defendants are not authorized Sprint dealers or retailers.

### SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

64.     Defendants' actions substantially harm Sprint by depriving Sprint of the opportunity to recoup its subsidies on the sale of its Sprint Phones and to earn profits by providing wireless service to legitimate Sprint consumers.  Indeed, Defendants' trafficking of iPhones is especially problematic for Sprint.  As noted above, the iPhone is an iconic product for which Sprint invested a significant amount of effort, time and capital in securing rights to sell, i.e. Sprint contracted with Apple to purchase 30.5 million iPhones over four years at a cost of $20 billion dollars.  Indeed, Sprint has staked a significant amount of its business on the iPhone brand.  (Copies of recent newspaper articles discussing Sprint and the iPhone are attached hereto as **Composite Exhibit L**).  Thus, Sprint's request for relief in this case is an urgent business issue.

65.     The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing and sale of Sprint Phones has also resulted in shortages of available Sprint Phones.  This misconduct has substantially harmed Sprint and its relationship with dealers and consumers because Sprint is not able to supply dealers with sufficient handsets to satisfy the demand from legitimate consumers.  This is particularly true in the case of the popular iPhones and Samsung Galaxy S3 models.  At least partially as a result of Defendants' conduct, consumers have not had a sufficient supply of phones available for use on the Sprint network.  Consequently, Sprint has lost, and continues to lose, potential customers and profits to wireless competitors.

66.     Sprint suffers additional, irreparable harm when its Phones are removed from the original packaging and altered because Sprint is deprived of the means to control the quality of its product.

67.     Moreover, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device.  In addition, the unlocked repackaged Sprint Phones are sold without the original manufacturer's warranty documentation.  Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on unlocked Phones or Phones sold without warranty documentation, consumers who purchase Sprint Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones.  As a result, Sprint's reputation suffers further.

68.     Defendants' improper and unauthorized resale of Sprint Phones for use on other networks, but which still bear the Sprint Marks, may result in calls by confused consumers to Sprint's customer relations department.  Sprint incurs substantial costs associated with such calls.

Sprint's reputation is further damaged by its inability to assist those consumers because despite bearing the Sprint Marks, it is no longer a Sprint Phone and Defendants' actions voided the warranties.

69.     Defendants' conduct has resulted in the dilution of the Sprint Marks; substantial harm to Sprint's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of Sprint products unlawfully sold by the Defendants and; as to the relationship between Sprint and Defendants.

70.     Sprint is also harmed when Defendants and their co-conspirators usurp legitimate customer upgrades by, *inter alia*, fraudulently requesting upgrades on legitimate customer accounts and retaining the new devices while the Sprint customer is left with an outdated device. These actions negatively impact the efficiency and speed of Sprint's wireless network because legitimate Sprint customers are not upgrading to newer technology through legitimate timely handset upgrades.   As a result, Sprint's brand, image and reputation are harmed because Defendants are stealing Sprint's customers' ability to obtain newer and faster Sprint products and services.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

71.     Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

72.     In addition to Sprint, T-Mobile USA, Inc. ("T-Mobile"), TracFone Wireless, Inc. ("TracFone"), Nokia Corporation ("Nokia"), and AT&T Mobility LLC ("AT&T") have each filed multiple lawsuits in numerous federal courts across the country against other defendants similarly engaged in the practice of defrauding legitimate consumers by bulk purchasing wireless telephones and reselling them for profit.

73.     Sprint, T-Mobile, AT&T, TracFone, and Nokia have obtained Final Judgments and Permanent Injunctions in these cases, examples of which are attached hereto as **Composite Exhibit M.**  For example, a defendant who failed to abide by an injunction issued by the United States District Court for the Southern District of Texas pled guilty to criminal contempt and has been sentenced to serve 57 months in prison.  Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit N.**

**COUNT ONE**

**BREACH OF CONTRACT**

74.     Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

75.     By purchasing Sprint Phones, Defendants acknowledged and agreed to the Terms and Conditions included with each Sprint Phone as printed on the package and as contained in the printed inserts packaged with the Sprint Phones.

76.     The Terms and Conditions constitute a valid binding contract between Sprint and Defendants.

77.     Sprint has performed or tendered performance in accordance therewith.

78.     Defendants have breached the Terms and Conditions by, *inter alia*: (a) failing to pay for the monthly service charges; (b) failing to pay the ETF fees; (c) failing to activate the Phones on the Sprint wireless network; (d) reselling the Sprint Phones and related products and services; and (e) using the Phones for a purpose that could damage or adversely affect Sprint.

79.     Sprint has suffered damages as a result of Defendants' breach of the Terms and Conditions.

## COUNT TWO

## UNFAIR COMPETITION

80.     Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

81.     Defendants' conduct in purchasing and/or inducing others to purchase the Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Phones, and reselling and/or assisting others to resell the Phones as new for activation on other wireless networks constitutes unfair competition under the common law of the State of Maryland.

82.     Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked Sprint Phones for the purpose of being resold, which undermines Sprint's subsidy program, constitutes unfair competition under the common law of the State of Maryland.

83.     Defendants' use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products and services, and the relationship between Sprint and Defendants.  Thus, Defendants have also engaged in unfair competition with Sprint in violation of the common law of Maryland by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by Sprint and are thereby misappropriating the benefits of substantial effort and money expended by Sprint in establishing its rights in and to the Sprint Marks.

84.     Defendants' actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to Sprint.

85.     Sprint is entitled to appropriate relief as prayed for hereinafter, including injunctive relief.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND PROSPECTIVE ADVANTAGE

86.     Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

87.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

88.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized retailers of Sprint Phones.

89.     A business relationship, and an expectancy of business relationships, exists between Sprint and the purchasers and prospective purchasers of its Sprint Phones and wireless service.

90.     There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

91.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers.

92.     Specifically, but without limitation, Defendants knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate consumers of Sprint

Phones and wireless service.  Defendants interfered with these relationships by engaging in their Bulk Handset Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.  Defendants also interfered with the contractual relationships that existed between Sprint and Runners or other purchasers by inducing the Runners or other purchasers to breach their contracts with Sprint.

93.     Defendants also knew that Sprint has business relationships with authorized dealers and retailers of Sprint Phones to provide said dealers with sufficient quantities of Sprint Phones for their legitimate consumers' use exclusively on Sprint's wireless network. Defendants' Bulk Handset Trafficking Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

94.     Defendants are intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

95.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

96.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

97.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

## COUNT FOUR

## CIVIL CONSPIRACY

98.     Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

99.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully bulk purchase, traffic, and resell unlawfully unlocked and altered Sprint Phones under at least one of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

100.     Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

101.     Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

102.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

## COUNT FIVE

## UNJUST ENRICHMENT

103.     Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

104.     By bulk purchasing the Sprint Phones at less than the manufacturer cost of the Phones for use on wireless networks other than Sprint's network, Defendants have obtained

benefits from Sprint which have caused significant harm to Sprint and led to significant financial gain to Defendants through their resale of the bulk purchased Sprint Phones.

105.    Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

106.    Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Sprint the value of the benefits Defendants acquired.

107.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' unjust enrichment.

<u>COUNT SIX</u>

**CONSPIRACY TO INDUCE BREACH OF CONTRACT**

108.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

109.    Defendants solicit others ("Runners") to purchase Sprint Phones in bulk for the benefit of Defendants.

110.    Defendants' active solicitation of Runners includes contacting Runners and requesting that they obtain specific brands and models.

111.    Sprint had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

112.    Defendants had knowledge of the contracts between Sprint and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with Sprint.

113.    The breaches of the contracts were proximately caused by Defendants' misconduct.

114.    Sprint suffered damages as a result.

## COUNT SEVEN

## COMMON LAW FRAUD

115.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

116.    As part of their Bulk Handset Trafficking Scheme, Defendants regularly and systematically misrepresent to Sprint that the Phones are being purchased for a legitimate purpose, that the Phones will be used by Defendants or other legitimate consumers on Sprint's wireless network, and that they will perform in accordance with the Terms and Conditions.

117.    When Defendants or their co-conspirators purchase Sprint Phones as part of their Bulk Handset Trafficking Scheme, they do not intend to use the Phones for a legitimate purpose or to activate them or maintain them active on Sprint's wireless network, or otherwise perform in accordance with the Terms and Conditions.

118.    Defendants know that they are required to activate for use the Sprint Phones on the Sprint wireless network, pay the monthly service charges, and otherwise comply with the Terms and Conditions.

119.    Defendants intended for Sprint to rely on their misrepresentations to allow Defendants to purchase and unlock the Phones for improper purposes.

120.    Sprint's reliance on Defendants' misrepresentations was reasonable under the circumstances.

121.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

122.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraud.

## COUNT EIGHT

### FRAUDULENT MISREPRESENTATION

123.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

124.    As part of their Scheme, Defendants regularly and systematically misrepresent to Sprint that the Phones are being purchased for a legitimate purpose and would be used by Defendants or other legitimate consumers on Sprint's wireless network.

125.    When Defendants or their co-conspirators purchase a Sprint Phone, they do not intend to use the Phone on the Sprint wireless network.

126.    Defendants knew that they were required to activate for use the Sprint Phones on the Sprint wireless network.

127.    Defendants intended for Sprint to rely on these misrepresentations to allow Defendants to acquire and unlock the Phones for improper purposes.

128.    Sprint's reliance on Defendants' misrepresentations was reasonable under the circumstances.

129.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

130.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraudulent misrepresentations.

## COUNT NINE

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

131.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

132.   The Sprint Phones that are trafficked by Defendants are loaded with confidential codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").  In other words, the Phones act as a gateway to Sprint's protected computer networks.  Sprint protects access to these protected computer networks through, among other things, the confidential codes contained in the Phones.

133.   Through their Bulk Handset Trafficking Scheme, Defendants are knowingly and with the intent to defraud Sprint trafficking in the confidential codes contained in the Phones.

134.   Defendants' transfer of the Phones and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes were transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes with intent to transfer or dispose of them.

135.   Defendants' trafficking of the Phones substantially affects interstate commerce and communication in that the codes contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

136.   Defendants' trafficking of Sprint's codes has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

137.   With respect to loss, Sprint has lost subsidy investments and spent well in excess of $5,000 responding to Defendants' contacts with Sprint customer service, investigating and assessing the possible impairment to the integrity of its protected computer networks, taking

action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones and codes, as well as tracking down fraudulently sold Phones.

138.    With respect to damage, by infiltrating the Sprint computer and telecommunications network and collecting and disseminating the illegally activated Phones and codes, Defendants have substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service.

139.    Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

140.    Defendants' conduct is intentional, malicious and willful.

141.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above,  and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT TEN

### UNAUTHORIZED ACCESS
### 18 U.S.C. § 1030(a)(5)(C)

142.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

143.    The Sprint Phones that are purchased by the Defendants and their co-conspirators pursuant to their Bulk Handset Trafficking Scheme are loaded with codes that access: (a)

Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").

144.    By illicitly acquiring and unlocking the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when purchased from Sprint.

145.    Defendants acquire and unlock the Phones by misrepresenting to Sprint that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.  Because Defendants are purchasing the Phones for illegitimate reasons, Defendants' access of Sprint's protected computer networks is not authorized in any way.

146.    Moreover, upon information and belief, when Defendants acquire a Sprint Phone from Runners or other purchasers, Defendants carefully examine the Phone, turn it on, and perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.  This too constitutes unauthorized access of Sprint's protected computer networks.

147.    By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

148.    Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants (or their co-conspirators) were initially permitted to access Sprint's protected computer networks when they originally

purchased the Phones from Sprint, but by purchasing the Phones solely to resell them without paying the monthly service charges and ETF fees, Defendants' access of Sprint's protected computer networks exceeds authorized access.

149.   Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's subsidy investment in its Phones.

150.   Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

151.   Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

152.   Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

153.   With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

154.    With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

155.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

156.    Defendants' conduct is intentional, malicious and willful.

157.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT ELEVEN

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

158.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

159.    The Sprint Phones that are purchased by the Defendants are loaded with codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").

160.    By purchasing the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when purchased from Sprint.

161.    Defendants purchase the Phones by misrepresenting to Sprint that the Phones are being purchased for a legitimate purpose for use by legitimate consumers on Sprint's computer networks when in fact, they are not.  As Defendants are purchasing the Phones for illegitimate reasons, Defendants' access of Sprint's protected computer networks is not authorized in any way.

162.    Moreover, upon information and belief, when Defendants purchase a Sprint Phone from Runners or other purchasers, Defendants carefully examine the Phone, turn it on, and perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.  This too constitutes unauthorized access of Sprint's protected computer networks.

163.    By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

164.    Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants (or their co-conspirators) were initially permitted to access Sprint's protected computer networks when they originally purchased the Phones from Sprint, but by purchasing the Phones solely to resell them without paying the monthly service charges and ETF fees, Defendants' access of Sprint's protected computer networks exceeds authorized access.

165.    Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's subsidy investment in its Phones.

166.    Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

167.    Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless telecommunications service pursuant to licenses issued by the Federal Communications Commission.

168.    Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

169.    With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

170.    With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.    Moreover,

Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

171.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

172.    Defendants' conduct is intentional, fraudulent, malicious and willful.

173.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because , and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated is at least $5,000 in value.

**COUNT TWELVE**

**FEDERAL TRADEMARK INFRINGEMENT
15 U.S.C. 1114 [§32(1) of the Lanham Act]**

174.    Sprint Communications reasserts and incorporates the factual allegations set forth above as though fully set forth herein.

175.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of certain federally registered Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

176.    Defendants' and/or their co-conspirators' use of certain federally registered Sprint Marks in connection with the sale of Sprint Phones has caused, and will further cause, a

likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Sprint Communications and Defendants.

177.    Defendants' and/or their co-conspirators' unauthorized use of certain federally registered Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Sprint Communications.

178.    Defendants' and/or their co-conspirators' use of certain federally registered Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a misappropriation of Sprint Communications' distinguishing and identifying federally registered trademarks that were created as a result of significant effort and expense by Sprint Communications over a long period of time.  Defendants' and/or their co-conspirators' use of certain federally registered Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of  Defendants have some connection, association or affiliation with Sprint Communications, and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint Communications.

179.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint Communications and the reputation and goodwill of Sprint Communications, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint Communications.  Sprint Communications is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

180.   Defendants' aforesaid acts constitute willful infringement of Sprint Communications' aforementioned federally registered trademarks in violation of 15 U.S.C. §1114.

## COUNT THIRTEEN

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING
### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§43(a) of the Lanham Act]

181.   Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

182.   Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

183.   Defendants' and/or their co-conspirators' use of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between Sprint and Defendants.

184.   Defendants' and/or their co-conspirators' unauthorized use of the Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

185.   Defendants' and/or their co-conspirators' use of the Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a

misappropriation of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense.  Defendants' and/or their co-conspirators' use of the Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.

186.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint and the reputation and goodwill of Sprint, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint.  Sprint is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

187.    Defendants' use of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products.  Defendants' advertising and promotion is false or misleading.  Defendants' advertising and promotion deceives or has the capacity to deceive consumers.  The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

188.    Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).

189.    Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

190.    Defendants knew or should have known that Plaintiffs are the owners and/or authorized licensees of the Sprint Marks and that Defendants had no legal right to use the Sprint Marks on their infringing products.  Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

## COUNT FOURTEEN

### CONTRIBUTORY TRADEMARK INFRINGEMENT

191.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

192.    By misappropriating and using at least one of the Sprint Marks in connection with the Bulk Handset Trafficking Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

193.    Defendants' unlawful, unauthorized, and unlicensed sale of the unlocked Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendants, were created, authorized or approved by Sprint, and includes warranties.

194.    Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint and containing original warranties.

195.    Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

196.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

197.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' actions.

**COUNT FIFTEEN**

**CONVERSION**

198.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

199.    Defendants have and are engaged in acts of conversion in violation of the law of the State of Maryland.

200.    Sprint has the right to provide its Phones and wireless service to the public. Defendants have no such privilege or right.

201.    Defendants knew or should have known that they obtained the Phones through illegitimate means and had no legal right to advertise, use or resell them.

202.    Defendants are wrongfully interfering with Sprint's rights by engaging in the Bulk Handset Trafficking Scheme.

203.    Defendants intentionally and willfully exerted dominion and ownership over the Sprint Phones, including, but not limited to, the Sprint Phones that were stolen by Defendants or their co-conspirators in burglaries or armed robberies of Sprint retail stores or Sprint authorized dealers.

204.    Defendants' conversion of Sprint's property has caused and continues to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at

trial.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT SIXTEEN

## REPLEVIN

205.    Sprint reasserts the allegations set forth in Paragraphs 1 through 70 above as though fully set forth herein.

206.    Many of the Sprint Phones trafficked by Defendants were stolen by Defendants or their co-conspirators in burglaries or armed robberies of Sprint retail stores or Sprint authorized dealers.  Upon information and belief, the 700 brand new in their original box 16 GB Sprint iPhone 5s identified in Exhibit J were obtained by Defendants through illegitimate means.

207.    Defendants are unjustly detaining these Phones.

208.    Sprint demands a pre-judgment seizure and the return of these Phones and any other Sprint property that Defendants' obtained through illegitimate means.

209.    Defendants' willful and intentional acts have caused and continue to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial. Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, Sprint Nextel Corporation and Sprint Communications Company, L.P., respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against Defendants, as follows:

(a) awarding Plaintiffs their compensatory, consequential, statutory and special

damages including, without limitation, its lost profits, Defendants' profits,

loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiffs and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint; and

(d) requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of phones and products bearing or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.


This 26th day of February, 2013.



By: _____
Charles N. Curlett, Jr.
Maryland Bar No. 28246
Email: ccurlett@levinCurlett.com
Steven H. Levin
Maryland Bar No. 28750
LEVIN & CURLETT LLC
Email: slevin@levinCurlett.com
250 West Pratt Street, Suite 1300
Baltimore, Maryland 21201
Phone: (410) 685-4444
Fax: (410) 685-2222

And

James B. Baldinger
Florida Bar No. 869899

Email:  jbaldinger@carltonfields.com
Stacey K. Sutton
Florida Bar No.0289530
Email: ssutton@carltonfields.com
CARLTON FIELDS, P.A
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401
Phone: (561) 659-7070
Fax: (561) 659-7368

Gail E. Podolsky
Georgia Bar No. 142021
Email: gpodolsky@carltonfields.com
CARLTON FIELDS, P.A.
One Atlantic Center
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Phone: (404) 815-2714
Fax: (404) 815-3415

*Attorneys for Sprint Nextel Corporation and
Sprint Communications Company, L.P.*