IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SPRINT NEXTEL CORPORATION, *et al.*   :
                                                                                  :
    v.                                                                :    CIVIL NO. CCB-13-617
                                                                             :
SIMPLE CELL, INC., *et al.*                 :

## MEMORANDUM

Plaintiffs Sprint Nextel Corporation and Sprint Communications Company, LP (collectively, "Sprint") have filed this action alleging that the defendants, various entities and individuals in the business of reselling mobile devices, unlawfully obtained and dealt Sprint devices without Sprint's authorization and to its detriment. Defendants Wireless Buybacks LLC, Wireless Buybacks Holdings LLC, Kevin Lowe, Kevin Salkeld, and Brendan T. Skelly (collectively, "the Wireless Buybacks defendants"), and defendants Simple Cell, Inc., Christopher Metzger, Nicholas F. Skelly, and Shannon A. Skelly (collectively, "the Simple Cell defendants") have filed motions to dismiss. Sprint has filed two motions to strike the defendants' affirmative defenses. For the reasons stated below, Wireless Buybacks and Wireless Buybacks Holdings' motion to dismiss and Simple Cell's motion to dismiss will be granted in part and denied in part. The other motions will all be denied.

## BACKGROUND

As alleged in the complaint, the defendants "are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and deceptive bulk purchase and resale . . . of Sprint Phones[.]" (Complaint, ECF No. 1, at ¶ 2). According to Sprint, the defendants participate in a scheme whereby they acquire large quantities of Sprint phones through a variety of means, including paying individuals to enter into Sprint

contracts with no intention of using the phones on Sprint's network, as well as traditional, criminal theft, and then reselling the phones "unlocked" so that they can be used without a contract and on other national and international networks. (Compl. ¶¶ 3-4, 6). This practice allegedly causes a substantial loss to Sprint because the carrier sells the phones "locked" to its network and under contract at a subsidized price. (Compl. ¶34-35). This subsidy is to be recouped by Sprint through the fees subscribers pay to use Sprint's network over the life of the contract. (*Id.*) According to Sprint, the defendants' alleged scheme has cost Sprint millions of dollars in the value of this subsidy as well as its expected profits from the subscriber contracts under which it intended to sell the phones. (Compl. ¶¶ 5, 64).

In an effort to thwart this alleged scheme and recover its losses, Sprint filed this action under sixteen legal theories: (1) breach of contract, (2) unfair competition, (3) tortious interference, (4) civil conspiracy, (5) unjust enrichment, (6) conspiracy to induce breach of contract, (7) common law fraud, (8) fraudulent misrepresentation, (9) trafficking in computer passwords in violation of 18 U.S.C. § 1030(a)(6), (10) unauthorized access in violation of 18 U.S.C. § 1030(a)(5)(c), (11) unauthorized access with intent to defraud in violation of 18 U.S.C. § 1030(a)(4), (12) federal trademark infringement, (13) common law false advertising and trademark infringement, (14) contributory trademark infringement, (15) conversion, and (16) replevin. The court entered a temporary restraining order on March 5, 2013, (ECF No. 43), that remains in effect. The defendants have filed various motions to dismiss Sprint's complaint as a whole and on various counts, and Sprint has filed motions to strike the defendants' affirmative defenses.

# ANALYSIS

## I. Motions to Dismiss

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Generally, the Wireless Buybacks defendants attack Sprint's complaint in its entirety for failing to allege specific facts related to each individual defendant. They argue that Sprint is

3

impermissibly using "group pleading" instead of attributing particular facts to particular defendants. This argument is unconvincing. As explained below with respect to each count, Sprint has carefully pled how the defendants' alleged scheme plausibly meets the elements of almost every count it has alleged.[1] Other than falling back on arguments that the complaint is, in general, vague or conclusory, the defendants point to no authority mandating that plaintiffs recite the name of each and every defendant within every fact and under each count when it is plausible that each defendant was involved in all of the facts as alleged. *Cf. Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004). There are likely many circumstances when merely grouping every defendant together as "defendants" will not meet the standard of *Twombly* and *Iqbal*. Here, however, where the defendants are all alleged to have participated in a scheme involving the same conduct— wrongfully trafficking in unlocked, unauthorized Sprint phones—it is appropriate to group the defendants together. Furthermore, the individual Wireless Buybacks defendants' argument that no conduct is directly attributable to them is an issue to resolve on the merits. Sprint has alleged that each individual associated with Wireless Buybacks facilitated the alleged scheme, (*see, e.g.*, Compl. ¶¶ 18-20, 48-49, 62, 82, 99, 175), and that is sufficient to survive a motion under Rule 12(b)(6).[2] *Twombly* and *Iqbal's* disparagement of the use of "formulaic recitations" in a

---

[1] None of the plaintiffs have challenged Counts 2 or 5 of the complaint, apart from their general arguments about the complaint's overall lack of specificity.

[2] The individual Wireless Buybacks defendants' argument that Sprint must "pierce the corporate veil" or otherwise establish some form of agency liability is also misplaced. The defendants are conflating claims made exclusively based on the conduct of a corporation, where a plaintiff seeks to hold shareholders or owners personally liable, with claims, like the ones here, based on the wrongdoing of the defendants themselves, regardless of their employment affiliation. The very case relied on by the defendants in their argument explains the distinction. *See Browning-Ferris Indust. Of Ill., Inc. v. Ter Maat*, 195 F.3d 953, 955-56 (7th Cir. 1999) ("[T]he status of being a shareholder does not immunize a person for liability for his, as distinct from the corporation's, acts. . . . There is no liability shield at all for an officer. If he commits an act that is outside the scope of his official duties, his employer may not be liable; but he is whether or not the act was within that scope.").

complaint works in both directions—just as no set of conclusory magic words will save a deficiently pled claim, plaintiffs need not adhere to a strict or repetitive construction to avoid dismissal where, on the face of the complaint, the facts alleged plausibly support the legal claims against each defendant.[3]

### A. Breach of Contract (Count 1)

"Maryland law requires that a plaintiff alleging a breach of contract must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quotation marks and citation omitted). Sprint has alleged that the defendants entered into a contract with Sprint by virtue of their purchase of Sprint phones, which contain "shrinkwrap" license agreements setting forth terms and conditions. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d 696, 698 n.1 (D. Md. 2008); *TracFone Wireless, Inc. v. Zip Wireless Products, Inc.*, 716 F. Supp. 2d. 1275, 1285-86 (N.D. Ga. 2010). This allegation is sufficient to maintain its breach of contract claim. While Sprint will have to prove, on the merits, that each defendant purchased or obtained a Sprint phone such that each defendant is individually subject to Sprint's terms and conditions, it is plausible, as alleged, that the defendants each acquired at least one phone in a manner by which they adhered to the terms and then breached them by, among other potential grounds, reselling the phone.

---

[3] The defendants' various arguments that the court should be skeptical of the complaint because of its similarities to other complaints alleging similar wrongdoing is without merit. Accepting Sprint's well-pled allegations, the conduct it seeks to remedy is purportedly a widespread problem for Sprint and it is plausible that more than the immediate defendants were involved in nearly identical wrongdoing.

**B. Tortious Interference (Count 3)**

There are two forms of tortious interference in Maryland: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) ("The principle underlying both forms of the tort is the same: under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation.") (citation omitted). In order to state a claim under either theory, the plaintiff must allege:

> (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Id.*; *see also Natural Design. Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984) ("[W]here a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted. A broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved.").

Sprint alleges tortious interference under both theories. First, Sprint argues that the defendants' alleged conduct was calculated "to interfere with . . . current and prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers." (Compl. ¶ 91). Second, Sprint alleges that the defendants "interfered with the contractual relationships that existed between Sprint and . . . purchasers [of legitimate Sprint devices] by inducing [them] to breach their contracts with Sprint." (*Id.* ¶ 92).

The Wireless Buybacks defendants argue that Sprint has failed to plead the necessary elements of this claim by failing to point to any "unlawful means" by which the defendants allegedly interfered with these relationships, or any intentionality on the part of the defendants to do so. These arguments are unavailing.

Although competition is generally "just cause" for causing economic damage, where a defendant has employed wrongful or unlawful means he or she may still be liable for the tortious act. *See Natural Design*, 485 A.2d at 676 (quoting Restatement (Second) of Torts § 768 (1977)). "While a plaintiff may prove that a defendant acted improperly or wrongfully by showing that he or she used violence, intimidation, injurious falsehood or other fraud, violated the criminal law, and instituted, or threatened, groundless civil suits or criminal prosecutions in bad faith, . . . in fact, conduct that is quite subtle, nevertheless, can be improper or wrongful." *Macklin v. Robert Logan Assoc.*, 639 A.2d 112, 119 (Md. 1994). Generally, such a determination is highly fact-based and must be made on a "case by case basis." *See Natural Design*, 485 A.2d at 675.

Here, Sprint has plausibly pled tortious interference based on the plethora of unlawful means it alleges the defendants employed to acquire Sprint phones, including actual theft and inducing others to breach their contracts with Sprint, the "unlocking" of the phones through violations of the Computer Fraud and Abuse Act, and the selling of such phones to Sprint's economic detriment and the defendant's profit. Sprint has plausibly alleged a pattern of behavior that a jury could find was an intentional scheme employed to gain a competitive advantage over Sprint in the mobile device market, which would not be unlawful but for the wrongful and criminal means the defendants allegedly employed. Accordingly, Sprint has stated a claim for tortious interference.

**C. Conspiracy (Counts 4 & 6)**

In Maryland, civil conspiracy is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (citation omitted). To prevail on a civil conspiracy claim, the "plaintiff must show more than just an unlawful agreement. The plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.* ("The tort actually lies in the act causing the harm; the agreement to commit that act is not actionable on its own but rather is in the nature of an aggravating factor."). Under Maryland's "intracorporate conspiracy doctrine . . . a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Baltimore-Washington Telephone Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008).

The defendants argue that beyond simply pleading that an agreement between the defendants existed, there are no facts in the complaint setting out exactly what the scope of the alleged conspiracy was. While Sprint cannot rely on the intracorporate relationships of any of the parties to sustain a civil conspiracy claim, Sprint has alleged an agreement amongst the various defendants. (*See* Compl. ¶¶ 99-101). Whether Sprint can ultimately prove that an actionable conspiracy existed is a question on the merits, but there is sufficient wrongdoing allegedly perpetrated by the parties, and it is plausible they agreed to participate together in the trafficking scheme. *See Hoffman*, 867 A.2d at 290 ("[A] conspiracy may be proved by circumstantial evidence, for in most cases it would be practically impossible to prove a conspiracy by means of

direct evidence alone.") (quotation marks and citation omitted). Accordingly, Sprint's conspiracy related claims will not be dismissed.

**D. Fraud (Counts 7 & 8)**

Sprint has not, however, sufficiently pled fraud under the heightened pleading standards of Rule 9(b), and its fraud claims (other than those involving the Computer Fraud and Abuse Act, as explained below) must be dismissed without prejudice. Rule 9(b) "requires a plaintiff to plead 'with particularity the circumstances constituting fraud.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) ("The circumstances include 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (citations omitted). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Here, Sprint alleges that the defendants "regularly and systematically misrepresent to Sprint that the Phones are being purchased for a legitimate purpose, that the Phones would be used by Defendants or other legitimate consumers on Sprint's wireless network, that they will pay all related charges, and otherwise perform in accordance with the Terms and Conditions." (Sprint Opp. to Wireless Buybacks Mot., ECF No. 94, at 7 (citing Compl. ¶¶ 116-117, 124)). Sprint also argues that it needs discovery to determine the exact details of the alleged pattern of misrepresentations.

In light of Rule 9(b), these generalized allegations are insufficient. Although it is likely that a systematic pattern of fraud may often be pled without a recitation of each and every

9

misrepresentation, Sprint's allegations are far too disparate—based on, apparently, the lies of an indeterminate number of individuals who may or may not be directly associated with the defendants—to maintain an action in common law fraud or fraudulent misrepresentation. The purposes of Rule 9(b) include ensuring "that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of and . . . to eliminate fraud actions in which all the facts are learned after discovery." *Harrison*, 176 F.3d at 784 (citation omitted). Sprint has pled no particular circumstance in which it can define, specifically, the content, speaker, or means by which any one defendant made a false representation to Sprint. The mere involvement or encouragement of lies made by others is neither sufficient to maintain a fraud action under Maryland law, *see Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995) ("In order to recover damages in action for fraud . . . a plaintiff must prove . . .that the defendant made a false representation *to the plaintiff*.") (emphasis added), nor specific enough to maintain a claim under Rule 9(b). Accordingly, Counts 7 and 8 of Sprint's complaint must be dismissed without prejudice.

### E. The Computer Fraud and Abuse Act ("CFAA") (Counts 9, 10, & 11)

Under the CFAA, 18 U.S.C. § 1030(g), "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA] may maintain a civil action against the violator." Sprint has pled three violations by the defendants. First, under § 1030(a)(6), Sprint alleges that the defendants trafficked in confidential codes through which individuals could gain access to Sprint's network. Second, under § 1030(a)(5)(C), Sprint alleges that the defendants intentionally accessed Sprint's protected network without authorization. Third, under § 1030(a)(4), Sprint also alleges that the defendants accessed its protected network "with intent to defraud" and by accessing such network "further[ed] the intended fraud and obtain[ed] anything of value."

10

Preliminarily, the defendants argue that Rule 9(b) should apply to § 1030(a)(4)'s required elements of an "intent to defraud" and "further[ing] the intended fraud" and that Sprint has failed to meet this standard, but the applicability of Rule 9(b) to this statute is unclear. *Compare T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1130 n.1 (W.D. Wash. 2012) ("'Intent to defraud' under Section 1030(a)(4) simply means wrongdoing . . . whereby the defendant participated in dishonest methods to obtain the plaintiff's secret information.") (citation and quotation marks omitted); *with Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009) (Rule 9(b) "plainly applies to section 1030(a)(4)'s requirement that the defendant's acts further the intended fraud."). The balance of authority, however, appears to support the view that Rule 9(b) does not apply to § 1030(a)(4). *See, e.g.*, *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 284 (N.D. Cal. 2011) ("Fraud under the CFAA only requires a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act." (citation and quotation marks omitted); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 719 n.13 (N.D. Ill. 2009); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008) ("The term 'defraud' for purposes of § 1030(a)(4) simply means wrongdoing and does not require proof of common law fraud."). Because the statute is more logically read as prohibiting "wrongdoing" to obtain something of value and not, specifically, only acts that sound in common law fraud, the court will decline to apply Rule 9(b) to Sprint's CFAA claims.[4]

---

[4] The court's decision not to apply Rule 9(b) to Sprint's CFAA claims should not be read to definitively establish a broad, general "wrongdoing" standard for liability under § 1030(a)(4). Congress's apparent analogy to mail or wire fraud in the CFAA has proven somewhat thorny in efforts to define the scope of this provision. *See* Dep't of Justice, Office of Legal Education, "Prosecuting Computer Crimes," 26-34, http://www.justice.gov/criminal/cybercrime/docs/ccmanual.pdf (examining the range of conduct that may run afoul of § 1030(a)(4)).

Otherwise, the defendants, for the most part, do not attempt to litigate the merits of Sprint's allegations by challenging Sprint's assertion that the elements of each CFAA claim apply to the alleged conduct.[5] What the defendants do dispute is that any of the alleged violations of the CFAA plausibly resulted in the requisite "loss" or "damage" to maintain a claim under the Act. Under the current version of the CFAA, "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service" and "damage . . . means any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8); (11). The Fourth Circuit has recognized that this "broadly worded provision plainly contemplates consequential damages" such as "costs incurred as part of the response to a CFAA violation, including the investigation of an offense." *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009).

The Simple Cell defendants also argue that these damages must be caused by a "single" violation. Despite their reliance on some older, nonbinding authority to the contrary, however, in light of the purpose of the statute, the CFAA appears to permit plaintiffs to aggregate multiple intrusions or violations for the purposes of meeting the $5,000 statutory threshold of § 1030(c)(4)(A)(i)(I). *See Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 934-35 (9th Cir. 2004) ("[A] narrow a construction of the $5,000 impairment requirement would merely 'reward sophisticated intruders.' The damage floor in the [CFAA] contains no 'single act'

---

[5] The Simple Cell defendants do argue that Sprint has no basis for alleging that they gained unauthorized access to any of Sprint's systems or that they "trafficked" in stolen passwords by virtue of their allegedly trafficking in unlocked phones, but these arguments go to the merits of Sprint's claims, not their plausibility. If proven, Sprint's allegations may support liability under these provisions.

12

requirement.) (citation omitted); *see also Vanderhye*, 562 F.3d at 646 (citing *Creative Computing*, 386 F.3d at 930). Thus, Sprint must only have alleged that, taken together, a defendant's violations over a 1-year period caused enough loss or damages.

In its complaint, Sprint alleges that it "has lost subsidy investments and spent well over $5,000 responding to [the defendants'] contacts with Sprint customer service, investigating and assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract [the defendants'] theft, and conducting damage assessment regarding [the defendants'] collection and dissemination of Sprint Phones and codes, as well as tracking down fraudulently sold Phones." (Compl. ¶ 137). While it is unlikely that all of these alleged damages can be remedied by the CFAA (such as tracking down fraudulently sold phones), many of the alleged damages are plausibly linked to the defendants' alleged intrusions onto Sprint's network, unlocking of its phone software, and use of proprietary codes to gain access to the locked phones. Whether these damages can be provably tied to any CFAA violation is an issue of fact, but Sprint has sufficiently pled its CFAA claims, which will proceed.

**F. Trademark Infringement (Counts 12, 13, & 14)**

To maintain a claim of trademark infringement under the Lanham Act, a plaintiff must allege:

> (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (construing claims under both 15 U.S.C. § 1114 and § 1125). The Simple Cell defendants argue that Sprint cannot plausibly maintain any of its infringement claims because there is no likelihood that consumers will be

confused by the defendants' alleged reselling of Sprint phones. They argue that when they resell Sprint phones, their customers "are receiving exactly what they bargained for." (Simple Cell Mem., ECF No. 88-1, at 39). Simple Cell's argument is based on the "first sale" doctrine which "preserves an area for competition by limiting the producer's power to control the resale of its product." *Sebastian Intern., Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1075 (9th Cir. 1995). The doctrine permits the resale of trademarked goods without subjecting the reseller to infringement liability where there is no possibility that the subsequent purchaser will confuse the reseller for the producer.

But, "[t]he first sale doctrine does not apply when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *TracFone Wireless Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1296-97 (S.D. Fla. 2012). "When the products sold by the alleged infringer and the trademark owner contain identical marks but are materially different, consumers are likely to be confused about the quality and nature of the trademarked goods." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3rd Cir. 1998). Sprint argues that the defendants' alleged practice of unlocking Sprint phones and selling them without the same services, warranties, or terms with which Sprint and its authorized dealers sell the phones is likely to cause consumer confusion about the source of the phones and the relationship between the defendants and Sprint. While the court acknowledges this is a close question, the defendants' alleged dealing in Sprint products, with Sprint trademarks, plausibly could confuse consumers. *See Volkswagenwerk Atiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (holding that the defendant could not use Volkswagen's trademark "in a manner which [was] likely to suggest to his prospective customers that he [was] part of Volkswagen's organization of franchised dealers and repairmen"); *Pak China*, 843 F. Supp. 2d at 1297 ("For example, reselling

products with inferior warranties . . . constitutes a material difference."). Otherwise, Sprint has pled every element of an infringement claim, and Sprint can thus maintain its trademark related claims against the defendants.

### G. Conversion and Replevin (Counts 15 & 16)

In Maryland, the common law tort of conversion contains two elements. First, the plaintiff must prove the defendant exerted "any distinct ownership or dominion . . . over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004) (quotation omitted). "This act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Id.* Second, the defendant must have "an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* at 836. Similarly, an action for replevin permits a plaintiff to recover "personal property that is wrongfully detained by the defendant." *Ganter v. Kapiloff*, 516 A.2d 611, 612 (Md. App. 1986); *see also McClung-Logan Equipment Co. v. Thomas*, 172 A.2d 494, 498 (Md. 1961) ("[I]n order to maintain an action of replevin the plaintiff must prove his right to immediate possession at the time the writ issues.").

The Wireless Buybacks defendants argue that Sprint has not demonstrated that it has title to any phone—stolen or otherwise—allegedly detained by the defendants and that it therefore cannot maintain a claim under a theory of conversion or replevin. To the contrary, Sprint has pled that the defendants are in possession of phones "that were stolen . . . in burglaries or armed robberies of Sprint retail stores or Sprint authorized dealers." (Compl. ¶ 40). While this does not prove that Sprint had title to such phones at the time they were stolen, it is plausible that it did,

15

and, thus, that the defendants' continued possession of any such phone is actionable. Accordingly, Sprint can maintain its conversion and replevin claims.

**II. Motions to Strike Affirmative Defenses**

Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While other judges in this district have held that the pleading standards of *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 662, apply to affirmative defenses, *see Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 335-336 (D. Md. 2012); *Bradshaw v. Hilco Receivables*, LLC, 725 F.Supp.2d 532, 536 (D. Md. 2010), neither the Fourth Circuit nor the Supreme Court has ruled on this issue.[6] In fact, Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted); *see also Haley Paint Co.*, 279 F.R.D. at 337 (exercising discretion not to strike defenses where "plaintiffs articulated no prejudice that would result from a denial of their motion").

Sprint seeks to strike the defendants' various affirmative defenses from their answers, arguing that it would be prejudiced by having to expend discovery resources confronting defenses that it alleges are conclusory or meritless. This argument is unconvincing. To the extent that any of the allegedly defective defenses that have been pled, such as collateral estoppel or statute of limitations, have no basis, there will be nothing for Sprint to discover or litigate. If the defendants can adduce evidence supporting these defenses, and fully articulate them, granting the

---

[6] It is worth noting, as a practical matter, that defendants ordinarily have a much shorter time to determine and plead affirmative defenses in their answer than plaintiffs have to develop the facts that should be pled to support their complaint.

motion to strike and permitting the defendants time to amend their answer to more thoroughly explain the basis of each defense, if there is any, will only delay the inevitable litigation of the merits. Otherwise, if no valid basis exists for any of the defenses, as Sprint argues, then the pled defenses will have little impact on the litigation going forward. Accordingly, the court is not persuaded by Sprint's allegations of prejudice, and its motions to strike the affirmative defenses of Brett Vaughn, Vaughn Solutions, LLC, and the Simple Cell defendants will be denied.

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss will be granted in part and denied in part (the individual Wireless Buybacks defendants' motion will be denied in its entirety) and Sprint's motions to strike will be denied.

A separate Order follows.

|  7/17/13  | |  /s/  |
|---|---|---|
| Date | | Catherine C. Blake |
| | | United States District Judge |