**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | : | |
| SPRINT NEXTEL CORP. | : | |
| | : | |
| v. | : | Civil No. CCB-13-617 |
| | : | |
| SIMPLE CELL, INC. | : | |
| | : | |

**MEMORANDUM**

Plaintiffs Sprint Nextel Corporation and Sprint Communications Company, L.P. (collectively, "Sprint") filed the current action claiming that the defendants, various entities and individuals in the business of reselling mobile devices, unlawfully obtained and dealt Sprint devices without Sprint's authorization and to its detriment. Defendants Wireless Buybacks, LLC, Wireless Buybacks Holdings, LLC, Kevin A. Lowe, Kevin Edward Salkeld, and Brendan T. Skelly (collectively, "the Wireless Buybacks defendants"), and defendants Simple Cell, Inc., Christopher E. Metzger, Nicholas F. Skelly, and Shannon A. Skelly (collectively, "the Simple Cell defendants") have jointly identified Whitey Bluestein ("Bluestein") as a potential expert witness. Sprint has filed a motion to strike Bluestein's expert report and preclude his testimony. For the reasons stated below, Sprint's motion to exclude Bluestein's expert testimony will be granted in part and denied in part.

**BACKGROUND**

As alleged in the complaint, the defendants "are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and deceptive bulk purchase and resale . . . of Sprint Phones." (Compl. ¶ 2, ECF No. 1.) According to Sprint, the defendants participate in a scheme whereby they acquire large quantities of Sprint phones through a variety of means, including paying individuals to enter into Sprint contracts

with no intention of using the phones on Sprint's network, as well as traditional, criminal theft, and then resell the phones "unlocked" so that they can be used without a contract and on other national and international networks. (Compl. ¶¶ 3-5.) This practice allegedly causes a substantial loss to Sprint because the carrier sells the phones "locked" to its network and under contract at a subsidized price. (Compl. ¶¶ 34-35.) This subsidy is to be recouped by Sprint through the fees subscribers pay to use Sprint's network over the life of the contract. (*Id.*) According to Sprint, the defendants' alleged scheme has cost Sprint millions of dollars in the value of this subsidy as well as its expected profits from the subscriber contracts under which it intended to sell the phones. (Compl. ¶¶ 5, 64.)

In an effort to thwart this alleged scheme and recover its losses, Sprint filed this action on February 26, 2013. (Compl.) The court entered a temporary restraining order ("TRO") on March 5, 2013, that remains in effect. (TRO, ECF No. 43; *see also* Order, ECF No. 119.) Relevant to this Memorandum Opinion, the Wireless Buybacks and Simple Cell defendants jointly identified Bluestein as an expert witness they may call to testify about (a) the existence and parameters of the secondary handset market, (b) whether the Wireless Buybacks and Simple Cell defendants' operations and participation in the secondary handset market are consistent with evolving industry practices, (c) the evolution of smartphones and the handset subsidy, (d) Sprint's participation in the secondary market, and (e) Sprint's claims for damages. (Mot. Exclude Ex. A, Rule 26(a)(2) Disclosure 1-2, ECF No. 253-1.) On August 12, 2015, Sprint filed a motion to exclude the expert report and testimony of Bluestein. (Mot. Exclude, ECF No. 253.) The Wireless Buybacks and Simple Cell defendants filed a response in opposition to Sprint's motion on August 31, 2015, (Resp., ECF No. 259), and Sprint filed a reply on September 17, 2015, (Reply, ECF No. 265).

**STANDARD OF REVIEW**

Under Federal Rule of Evidence 104(a), a district court is responsible for determining "preliminary question[s] about whether a witness is qualified . . . or evidence is admissible." Fed. R. Evid. 104(a). Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court has emphasized the trial court's role as gatekeeper, requiring it to make a pretrial determination "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending *Daubert*'s analysis of expert testimony based on "scientific" knowledge to expert testimony based on "technical" and "other specialized" knowledge); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199-200 (4th Cir. 2001). In essence, the trial court must perform a two-pronged analysis in order to satisfy its gatekeeping function. The first question is whether the proffered scientific evidence is reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). The second question is whether it will help the trier of fact, which is generally a question of relevance. *Id.* In *Daubert*, the Supreme Court identified several factors to assist in evaluating the reliability of the the proposed expert testimony: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a

technique has a high known or potential rate of error and whether there are standards controlling

its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant

scientific community. *Cooper*, 259 F.3d at 199 (citing *Daubert*, 509 U.S. at 592-94). This list is

neither definitive nor exhaustive, however, and some factors may be more pertinent than others

"depending on the nature of the issue, the expert's particular expertise, and the subject of his

testimony." *Id.* at 200.

## ANALYSIS

Sprint argues that Bluestein's testimony and report should be excluded because, *inter*

*alia*, he is not qualified as an expert, his report fails to demonstrate a reliable basis for his

opinions, and his opinions will not be helpful to the jury. These arguments will be addressed in

turn.

1.  Qualifications

Even though experiential expert testimony does not "rely on anything like a scientific

method," it is not true that "experience alone—or experience in conjunction with other

knowledge, skill, training or education—may not provide a sufficient foundation for expert

testimony." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid.

702 advisory committee's note). "To the contrary, the text of Rule 702 expressly contemplates

that an expert may be qualified on the basis of experience." *Id.* (quoting Fed. R. Evid. 702

advisory committee's note).

Bluestein is the managing partner of Bluestein & Associates, LLC, a California-based

mobile advisory firm. (Mot. Exclude Ex. B, Bluestein Expert Report 3, ECF No. 253-2.) In 1995,

he developed a business model for the first Mobile Virtual Network Operator ("MVNO"), (*id.*),

which apparently included a cellular resale program, and he continues to work in that space,

(Mot. Exclude Ex. D, Bluestein Dep. 80:3-12, ECF No. 253-4). Through his work on MVNOs, he has developed relationships with wholesale programs at AT&T, Sprint, and T-Mobile. (Bluestein Expert Report 3-4.) In particular, three of the MVNOs he has worked with are on the Sprint network and were early participants in Sprint's Bring Your Own Device ("BYOD") program, where customers activate customer-provided handsets on a host network. (*Id.* at 4.) He also has worked with retailers, including Walmart, Best Buy, and RadioShack, exploring mobile distribution arrangements on behalf of various companies. (*Id.*) In the 1980s and 1990s, he worked in various positions for MCI Communications Corporation. (*Id.* at 5-6.)

This experience qualifies Bluestein to offer opinions about the secondary handset market, the defendants' participation in it, and the evolution of smartphones and the handset subsidy.[1] The defendants have demonstrated that Bluestein's mobile advisory firm and the engagements he has retained in connection with that business, as well as his work with MVNOs, BYOD programs, and retailers, have required Bluestein to stay informed about developments in the cellular industry and the secondary handset market. Given this experience, the court also is not prepared at this point to exclude Bluestein's testimony about Sprint's business model and participation in the secondary handset market. The fact that Bluestein did not have access to Sprint's business records when he wrote his report goes to the weight of his testimony, and can be brought out on cross-examination. The court will reserve judgment on whether Bluestein can testify about Sprint's damages. On the one hand, Bluestein has some general knowledge about the business models of cellular service providers which may be sufficient to challenge the assumptions underlying Sprint's theory of damages. On the other hand, he is not an economist, accountant, or damages expert.

---

[1] Sprint argues that "[g]eneral business experience in the wireless industry" does not render Bluestein qualified to offer an opinion about the defendants' involvement in a "Bulk Handset Trafficking Scheme." (Mot. Exclude 2, 10.) As will be discussed below, a dispute of facts is not a reason to exclude expert testimony.

2.  Basis

Rule 702 requires an expert's testimony to be "based on sufficient facts or data." Fed. R.

Evid. 702(b). An expert's opinion "should be excluded when it is based on assumptions which

are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr.*

*Co.*, 29 F.3d 137, 142 (4th Cir. 1994). When "the parties' experts rely on conflicting sets of

facts," however, "it is not the role of the trial court to evaluate the correctness of facts underlying

one expert's testimony." *Galaxy Comput. Servs., Inc. v. Baker*, 325 B.R. 544, 561 (E.D. Va.

2005) (quoting *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)); *see*

*also* Fed. R. Evid. 702 advisory committee's note ("When facts are in dispute, experts sometimes

reach different conclusions based on competing versions of the facts. The emphasis in the

amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an

expert's testimony on the ground that the court believes one version of the facts and not the

other."). As long as an experiential witness explains "how [his] experience leads to the

conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his]

experience is reliably applied to the facts," *Wilson*, 484 F.3d at 274 (alterations in original), the

expert can rely on a disputed set of facts that is adequately based in the record.

Here, Sprint takes issue with the fact that Bluestein has based his opinions on the

defendants' version of events, and claims Bluestein does not explain how he reached his

conclusions. (Mot. Exclude 14.) As the defendants point out, however, Sprint has not yet proven

that the defendants engaged in the alleged unlawful handset trafficking scheme. And the

defendants' version of events is sufficiently based in the record. As early as March 4, 2013, in a

motion opposing the TRO, the Wireless Buybacks defendants maintained that they are (or work

for) a "reputable, award-winning company that has been engaged in the legitimate secondary

market for wireless telephones for approximately six years," that ninety percent of their handset sales are to Best Buy for use in Best Buy's insurance phone replacement program, and that Best Buy's customers use the phones on the wireless network for which they were originally manufactured. (Wireless Buybacks Resp. Opp'n TRO 1, 3, ECF No. 37; *see also id.* Ex. 1, Brendan T. Skelly Decl. ¶¶ 4, 5, ECF No. 37-1.) Further, Bluestein is entitled to rely on public reports that Sprint has been losing customers to explain how Sprint handsets—which former customers would no longer use—might end up in the secondary market. (*See* Bluestein Expert Report 24-25, 27.)

Bluestein also has adequately explained how he reached his conclusions. According to his report, Bluestein's opinions are based on his "experience and knowledge," and his review of several documents, including the complaint; the defendants' answers to interrogatories, answers to requests for admissions, and declarations; the plaintiffs' responses and objections to several of those answers; other expert reports; and articles and studies about the secondary handset market, smartphones, and various service plans. (Bluestein Expert Report 6-8.) Bluestein's basis for his conclusions is sufficiently supported.

Therefore, the court finds, first, that Bluestein is entitled to rely on the defendants' version of the facts, for which there is a sufficient basis in the record, and on information publicly available; and, second, that Bluestein has adequately explained how that information, as well as his experience and knowledge, provide the basis for his opinions.

3. Helpful to the jury

Rule 702 provides that an expert may testify if his knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Testimony from an expert is presumed to be helpful "unless it concerns matters within

the everyday knowledge and experience of a lay juror." *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Expert testimony on an ultimate issue is excludable under Rule 702 if it does not aid the jury, and "[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *See United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). The best way to determine whether opinion testimony contains legal conclusions "is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* (quoting *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)).

Except for his description of the rising popularity of smartphones and his bare legal conclusions, Bluestein's testimony is helpful to the jury. A lay juror is not likely to know when and why a customer would sell her phone in the secondary handset market; that the secondary market largely services insurance replacement programs, BYOD programs, and Lifeline services; and that cellular service operators such as Sprint, retailers such as Best Buy, and online sites such as Amazon all participate in the secondary handset market. (Bluestein Expert Report 8-13, 15-21, 27.) It is possible that some jurors, through their experiences shopping for cell phones, are familiar with some of the service contract options offered by cellular service providers. They are unlikely, however, to understand the interplay between the secondary handset market and postpaid, prepaid, and early upgrade service plans; the extent to which carriers subsidize the cost of smartphones; and how cellular service providers use prorated Early Termination Fees to recoup handset subsidies from customers who cancel their service contracts. (*Id.* at 8-13.) Bluestein's opinion that it would not be profitable for legitimate participants in the secondary handset market, as the defendants maintain they are, to traffic in stolen phones because such handsets cannot be activated on Sprint's network is the type of expert testimony that Rule 702

contemplates, (*see* Bluestein Dep. 107:11-108:5, 114:21-116:6), and Sprint's objections to this testimony, including that Bluestein admitted in his deposition that stolen phones could be activated on networks overseas, may be brought out during cross-examination, (*see* Reply 10 n.1). The court also disagrees with Sprint that the testimony described above is unfairly prejudicial. (*See* Reply 18-19.) Because this court believes, however, that lay jurors understand what smartphones are and that their popularity has increased exponentially over the past decade, the court finds that Part Six of Bluestein's expert report, which outlines this information, is not in itself helpful to the jury, although it may be useful background to other opinions Bluestein is expected to offer.[2] (Bluestein Export Report 13-15.)

Finally, the portions of Bluestein's report that are unhelpful legal conclusions will be excluded. It is unhelpful, for example, for Bluestein to opine on whether the parties have induced breaches of contract,[3] or whether the Simple Cell and Wireless Buybacks defendants are "bona fide" or "good faith" participants in the secondary handset market. (*See, e.g.*, Bluestein Expert Report 2, 21, 24, 25, 26, 27, 28, 30.) Further—and the court recognizes that this was at Sprint's request—Bluestein in his deposition went through each count of the complaint and stated that he did not believe the defendants participated in the conduct alleged therein. (Bluestein Dep. 147:13-149:20.) Bluestein may testify to the reasons why a player in the secondary handset market would not traffic in stolen phones, and that, based on their version of events, the defendants' conduct is consistent with an ordinary business participant in that market. (*See, e.g.*, *id.* 149:22-150:25.) He may not, however, take away from the jury its responsibility to determine the facts and, ultimately, whether the defendants are liable for the allegations set forth by Sprint

---

[2] As stated above, the court will reserve judgment on whether Bluestein can testify about Sprint's damages.
[3] Bluestein cannot specifically testify that Sprint "induced" breaches of contract. Whether general information about Sprint's campaign to attract new customers is relevant to the issues in this case remains to be seen. (*See, e.g.*, Bluestein Expert Report 22-25, 27, 30.) The court will reserve judgment on that issue.

in its complaint.

A separate order follows.


February 10, 2016                                                        /s/
Date                                         Catherine C. Blake
                                             United States District Judge